Roxana Irene Look, a/k/a Roxana Irene Ware, Plaintiff-Appellee, *v.* Barry Allen Look, Defendant-Appellant—(John D. Spaits *et al.*, Intervenors-Appellees.)

(No. 74-60;

Third District—August 15, 1974.

Richard Hayes, of Pekin, for appellant.

Arthur Christie, of Moehle, Reardon, Smith & Associates, of Pekin, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This action was brought to modify a decree for divorce and change the custody of a minor child from the mother to the father. Maternal grandparents were allowed to intervene and custody was given to them by the Circuit Court of Tazewell County. The father appeals.

Barry Allen Look, the petitioner in this cause, and respondant, Roxana Irene Look, now known as Roxana Irene Ware, were married to each other on August 8, 1964. The only child of the marriage, Heath Allen Look, was born August 26, 1966. On February 28, 1968, the Circuit Court of the Tenth Judicial Circuit of Illinois, Tazewell County, entered a decree divorcing the parties from each other and granted Roxana Irene Ware the custody of Heath Allen Look. Petitioner, herein, was granted reasonable rights of visitation with his son and ordered to pay to Roxana Irene Look fifteen dollars ($15) per week child support and any substantial major medical, dental or hospital expenses incurred for his son. The decree also provided that Roxana Irene Look would reside with the child in Kansas City, Missouri.

Subsequent to the entry of the decree, Roxana Irene Look and her son, who is the subject of these proceedings, moved to the home of her parents, John D. Spaits and Ava Spaits in Manito, Illinois. Roxana Irene Look then began a course of conduct that resulted in her leaving her son in the care of her parents, the intervenors in these proceedings. During the next 5 years the intervenors cared for Heath Allen Look in the absence of the daughter, Roxana Irene Look.

From the date of the decree to the commencement of these proceedings, intervenor's daughter, Roxana Irene Look, lived with several men to whom she was not married. As a result of one of these relationships at least one other child was born to her and that child was not taken by the intervenors, but was placed for adoption by Roxana Irene Look.

The petitioner in this cause, Barry Allen Look, had paid child support to Roxana Irene Look in the sum of fifteen dollars ($15) per week and was current in that support at the time of these proceedings. He had remarried and was living in Pekin, Illinois, with his new wife of some three and one-half (3½) years. Both he and his new wife were employed and they were purchasing a two bedroom home. Heath Allen Look is the petitioner's only child and petitioner's wife has had no children born to her. Petitioner was 29 and his wife was 26 at the time of these proceedings. They have a small savings and have a family insurance program that includes Heath Allen Look.

The petitioner visited his son often according to his testimony and about four times a year according to the testimony of intervenor, Ava Spaits. He always visited with his son on Christmas and birthdays and brought him clothes and presents.

He had contacted a lawyer in a prior year to determine whether or not he could win the custody of his son. In February 1973, when Roxana Irene Look took Heath Allen Look from the home of her parents to her home in or near Kansas City, Missouri, the intervenor supplied petitioner with enough facts about their daughter to enable him to file the petition to modify decree. Petitioner and his present wife testified that they want Heath Allen Look in their home to raise and care for. Mrs. Look testified that she has known Heath since her marriage and would quit her job if necessary to care for Heath.

Intervenors, John D. Spaits, was 72 years old and his wife, Ava Spaits, was 59 years old when these proceedings were commenced. They never requested the petitioner to repay them for any medical expenses incurred for Heath and there was no evidence that any substantial major medical expenses were ever incurred. Ava Spaits would collect her daughter's support money from the Circuit Clerk in Tazewell County and mail it to her daughter.

On March 10, 1973, petitioner filed a petition to modify decree of divorce and the petition was set for hearing on the 12th day of April, 1973. On March 12, 1973, John D. Spaits and Ava Spaits caused to be filed in the Circuit Court of the Eighth Judicial Circuit of Illinois, Mason County, a petition to declare Heath Allen Look neglected. They were awarded temporary custody and guardianship by said court on the same day the petition was filed.

Heath Allen Look, while under the actual care and control of the intervenors, was retained in the first grade, as he received unsatisfactory grades in spelling, reading, writing and arithmetic. At the end of the first grade, Heath was unable to write numbers correctly or in proper sequence or to write letters correctly. Heath had missed more than 30 days of school while in kindergarten and more than 38 days of school while in first grade, out of a possible 178 school days.

On May 29, 1973, the court entered an order finding petitioner Barry Allen Look to be a fit and proper person, found the intervenors to be fit and proper persons and found Roxana Irene Ware to be unfit to have custody of her son. The court decided that it would be in the best interest of Heath Allen Look, age 6, that his custody be awarded to John D. Spaits and Ava Spaits. Defendant was ordered to pay fifteen dollars ($15) per week support to John D. Spaits and Ava Spaits. On June 22, 1973, the defendant filed a motion for a rehearing and affidavit. Hearing was held on the motion on December 21, 1973, and the court entered an order denying the motion.

The appellant father contends that the trial court erred in awarding custody of his son to the grandparents when he was found to be a fit and proper person for the reason that it is in the best interest of the child that he reside with his father and therefore his right to custody is superior.

In proceedings affecting the custody of a child, the primary consideration is the present and prospective welfare of the child, or, as otherwise stated, the best interests of the child. Naturally, no hard-and-fast rule can be laid down as to what will best serve the welfare and interests of a child. Each case must be determined according to its own circumstances and the question rests largely in the sound discretion of the trial court. When the people having the actual custody of the child at the time a change is sought have properly provided and supervised its needs for a substantial period of time and the child has become attached to the environment and to the grandparents who have made possible the happiness, security and comfort of its early years, a court is not justified in transferring that custody to another, except for the most cogent reasons. When people, through the goodness of their hearts, take

a child into their home and lavish on it their affection and care, they are entitled to much consideration in an action involving the custody of such child. *Jarrett v. Jarrett*, 348 Ill.App.1, aff'd 415 Ill. 126.

■■ Whenever the court is called upon to determine whether custody of a minor child should be awarded to the father of the child or his grandparents the "best interests of child" doctrine stands for the proposition that custody be awarded in accordance with the best interest of the child regardless of the fitness of the father. We agree with appellant that there is a presumption that custody by the father will be in the best interest of the child and ordinarily the natural right of a father will prevail in a contest between him and the grandparents where both parties are equally fit to care for the child. However, the rule is applicable only when *the father is not chargeable with laches or forfeiture as having left the child with the other party* for a long period of time and further the rule always yields to the best interest of the child. *(People ex rel. Edwards v. Livingston*, 42 Ill.2d 201.) In a particular case the forces of environment may be so strong as to compel the court, in the best interests of the child, to deny the natural right of the father even when he is a perfectly fit person to have custody of the child. Annot., 25 A.L.R. 3d 7; *People ex rel. Hermann v. Jenkins*, 34 Ill.App.2d 255.

To sever home ties of long standing as here where the child has lived with the grandparents almost all of his life, a home full of love and care, for the sole purpose of placing him with his father cannot be said to be in the best interest of the child.

■■ The trial judge had the best opportunity to observe the parties and their conduct and demeanor while testifying. This is a vital factor in evaluating the correctness of his determination. We should not disturb his findings unless they are palpably against the manifest weight of the evidence. *Giacopelli v. Florence Crittenton Home*, 16 Ill.2d 556.

Appellant contends that the trial court erred in implying that the father had virtually abandoned his son. The trial court in referring to its original order stated:

"Now as a result of that hearing the Court did determine the mother was an unfit person to have the custody of that child, the father at that time would be a fit person, but considering the virtual abandonment of that child, he gave the child to the maternal grandparents here for a period in excess of five years."

It is apparent from a careful reading of this sentence that the virtual abandonment to which the court is referring is that of the mother, not the father. Even assuming that the Court did mean to imply that there was a "virtual abandonment" by the father, the term was only used to

describe the acquiescence by the father to the status quo for over 5 years.

■■ For many years the father acquiesced in everything that was being done by the grandparents for his son and was pleased to have them give their care and love to the boy. The father never had any close association with his son. The arrangement was agreeable to appellant for many years before he sought to change it. The best interests of Heath require that it be not discontinued. The record sustains the judgment of the trial court and the judgment appealed from is therefore affirmed.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.