MICHAEL J. BARCLAY, Plaintiff, *v.* KIM D. BARCLAY, a/k/a Kim Johnson, Defendant-Appellant.—(CLAYTON BARCLAY *et al.*, Intervenors-Appellees.)

Third District   No. 78-73

Opinion filed December 29, 1978.

Raymond C. Rose and Larry T. Frantz, both of Peoria, for appellant.

John A. Bernardi, of Bernardi, Ault & Bode, of Pekin, for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Kim Barclay appeals from an order changing custody of her son James Barclay from the father to the paternal grandparents.

James was born in 1970, the son of Michael Barclay and defendant. The young couple lived in Pekin until Michael enlisted in the United States Navy. In May of 1972, defendant and the baby joined Michael in Connecticut where he was stationed but marital problems arose, and in October 1972, Michael took 15-month-old James back to Pekin and left

him with Michael's parents, Clayton and Doris Barclay. Defendant apparently agreed with this arrangement. A few months later Michael obtained an uncontested divorce from defendant in Connecticut. The divorce decree awarded custody to Michael, but James in fact was then living with his grandparents and has continued to do so until the present time.

After the divorce defendant remained in the East and did not see her son until she returned to Pekin in May of 1974. She obtained work as a waitress, but three months later she moved to South Carolina for a few months and then returned to Pekin where she lived with a married sister and worked as a bartender. In March of 1975 she went back to South Carolina with Michael Johnson who had been a classmate of Michael Barclay at submarine school in the Navy. After Johnson received his discharge from the Navy, he and defendant were married. They have resided in Wichita, Kansas, since July 12, 1975, and both are employed by Cessna Aircraft Corporation. Defendant, who was 24 years old at the time of trial, has visited James several times over the years and spent one week with him in the grandparents' home during May of 1976.

In December of 1976, the grandparents as intervenors filed a complaint in the Circuit Court of Tazewell County to have the Connecticut judgment for divorce entered as an Illinois judgment and to have the Connecticut custody provision modified by transferring custody to themselves. Defendant filed a counterclaim in the Illinois proceeding to obtain custody herself. The father did not respond to either the complaint or the counterclaim and was in default as to both.

The trial court heard extensive evidence concerning past and present circumstances of all the parties. Briefly, the evidence indicates that prior to her second marriage, defendant was unsettled and impoverished but that she now has a happy stable marriage and her circumstances are much improved. She and her husband have purchased and fixed up an older, three-bedroom home and have bettered themselves financially. To prepare for the custody hearing, defendant voluntarily obtained a home study by a social worker and a psychiatric evaluation, both of which indicate that she and her husband are intelligent and mature, and are fit persons to have custody of James.

At the time of trial the grandmother was a 49-year-old school teacher who is described as a warm, affectionate person and who has been very close to James. The grandfather is 52 and works nights for a farm supply company so that he can be at home with James in the mornings. The Barclays are active in their church and have provided James with a stable loving home. James, who did not appear in court, was characterized as a bright, happy, outgoing seven-year-old. His father, Michael Barclay, lives in Pekin and sees James once every week or two. There was evidence indicating that Michael has a history of drug problems and that he is

somewhat unstable emotionally. He testified on behalf of his parents and against his ex-wife.

At the conclusion of the custody hearing the trial court found that defendant "has completely turned herself around," has a fine marriage, and could now provide a good home for her son. The court stated that the Barclays originally took James as temporary custodians but with the passage of time their position changed to that of parents. After noting that a natural parent is ordinarily given a preference over persons who are not parents, the court stated that even so, the overriding consideration is the best interest of the child. The court concluded that James' best interest would not be served by taking him from the home that has, with the passage of time, become his home. The court also ruled that defendant had no support obligation but was entitled to reasonable rights of visitation. This appeal followed. Since the trial and judgment order occurred after October 1, 1977, the issues on appeal are governed by the provisions of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1977, ch. 40, par. 801(b).

Defendant seeks a reversal on three grounds: (1) that the best interest of a child of tender years is presumptively with its mother; (2) that a natural parent has a superior right to custody over the grandparents; and (3) that the decision of the trial court was contrary to the manifest weight of the evidence.

Defendant first contends that the trial court failed to apply the "tender years doctrine" whereby a child of tender years will be entrusted to the care and custody of the mother, if she is a fit and proper person to rear the child, upon the theory that maternal affection is more active and better adapted to the care of a child. Defendant argues that since she was not proven unfit, the court should have awarded custody to her. The doctrine was discussed with approval in *Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300, where the court said that to deny custody of a young child to the mother, compelling evidence must be presented proving the mother to be an unfit person, or there must be a positive showing that to deny custody to the mother would be for the best interests of the child.

■■ Defendant's argument is without merit. This doctrine presupposes a custody dispute between a father and a mother, not between a mother and grandparents, and thus would not apply here.

Second, defendant claims that a natural parent has a superior right to custody as against the right of any other person, including grandparents, unless the natural parent is unfit. This rule was recognized in such cases as *Eaton v. Eaton* (1st Dist. 1977), 50 Ill. App. 3d 306, 365 N.E.2d 647 and *Stingley v. Wesch* (4th Dist. 1966), 77 Ill. App. 2d 472, 222 N.E.2d 505.

■■ Of particular pertinence to this issue is the case of *Look v. Look* (3d Dist. 1974), 21 Ill. App. 3d 454, 315 N.E.2d 623, where a divorce decree had awarded custody of an infant child to the mother but the actual care

of the child was provided by the maternal grandparents. After five years the natural father sought to modify the decree to obtain custody, and the maternal grandparents intervened. In affirming the trial court's order which gave custody to the grandparents, this court said:

"In proceedings affecting the custody of a child, the primary consideration is the present and prospective welfare of the child, or, as otherwise stated, the best interests of the child. Naturally, no hard-and-fast rule can be laid down as to what will best serve the welfare and interests of a child. Each case must be determined according to its own circumstances and the question rests largely in the sound discretion of the trial court. When the people having the actual custody of the child at the time a change is sought have properly provided and supervised its needs for a substantial period of time and the child has become attached to the environment and to the grandparents who have made possible the happiness, security and comfort of its early years, a court is not justified in transferring that custody to another, except for the most cogent reasons. When people, through the goodness of their hearts, take a child into their home and lavish on it their affection and care, they are entitled to much consideration in an action involving the custody of such child. [Citation.]

\* \* \* We agree with appellant that there is a presumption that custody by the father will be in the best interest of the child and ordinarily the natural right of the father will prevail in a contest between him and the grandparents where both parties are equally fit to care for the child. However, the rule is applicable only when *the father is not chargeable with laches or forfeiture as having left the child with the other party* for a long period of time and further the rule always yields to the best interest of the child. [Citation.] In a particular case the forces of environment may be so strong as to compel the court, in the best interests of the child, to deny the natural right of the father even when he is a perfectly fit person to have custody of the child. [Citations.]

To sever home ties of long standing as here where the child has lived with the grandparents almost all of his life, a home full of love and care, for the sole purpose of placing him with his father cannot be said to be in the best interest of the child." (21 Ill. App. 3d 454, 457-58, 315 N.E.2d 623, 625-26.)

Those words are just as applicable to the Barclays as they were to the Looks, and we therefore must reject defendant's contention.

Finally defendant argues that the grandparents failed to sustain their burden of proving a change of their conditions or circumstances to justify modification of the custody order while she has proved a dramatic improvement in her circumstances and that the decision, therefore, was

contrary to the manifest weight of the evidence. We believe this argument is based upon the false premise that the grandparents are attempting to *change* the existing custody, when in fact James has lived in the grandparents' home for nearly six years. Viewing the situation realistically, the award of custody to the grandparents was not a change of custody but merely a modification of the custody order to conform to the realities of the situation. See *Look v. Look* (3d Dist. 1974), 21 Ill. App. 3d 454, 315 N.E.2d 623.

■■ Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act is applicable to this case. That section provides:

> "The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:
>
> (1) the custodian agrees to the modification;
>
> (2) the child has been integrated into the family of the petitioner with consent of the custodian;
>
> * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 610(b).)

Here Michael Barclay was named custodian of James by the Connecticut judgment. That judgment is now being modified in a manner agreeable to Michael and more importantly, James has been integrated into the family of his grandparents with the consent of Michael. Thus the trial court's order complies with the standards provided by section 610.

It is noteworthy that defendant did not object to this custody arrangement at any time during the intervening years and even during the intervals when she lived in Pekin, she made no effort to have her son live with her. The only evidence unfavorable to the grandparents was some testimony that James is "spoiled" and defendant's testimony that the grandfather had in the past been too harsh on his own sons. This evidence does not outweigh the extensive evidence of the favorable environment the Barclays have provided for their grandson.

Having decided that defendant has no legal presumption in her favor, we conclude that the decision of the trial court is not contrary to the manifest weight of the evidence. Therefore the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.