NANCY LORRAINE SOLDNER, Plaintiff-Appellant, *v.* BILL SEBASTIAN SOLDNER, Defendant-Appellee.

Fifth District   No. 78-214

Opinion filed March 5, 1979.

JONES, J., dissenting.

Charles M. Given, of Mt. Vernon, for appellant.

Ronald C. Becker, of Salem, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Nancy L. Soldner, appeals from an order of the Circuit Court of Marion County modifying a divorce decree by transferring custody of Heather Soldner from the plaintiff to the defendant, Bill S. Soldner, subject to actual physical custody of the child by the defendant's parents, Bill and Mary Soldner.

On May 8, 1975, plaintiff was awarded a divorce from the defendant on the grounds of mental cruelty. The decree awarded custody of Heather, the minor child of the parties, to the plaintiff subject to specific visitation rights in the defendant. This was in accordance with a marital settlement agreement made by the parties which was approved by the trial court and incorporated into the divorce decree. In pertinent part, the visitation rights granted to the defendant included alternate weekends and legal holidays with Heather. The defendant or his parents were to call for and return the child during the periods of visitation.

On April 22, 1977, the defendant filed a petition seeking a change in custody from the plaintiff to defendant's parents. In his petition, defendant alleged, *inter alia,* that since the entry of the divorce decree the plaintiff and Heather had moved from her father's home into a dilapidated house; that she had cohabited with a man to whom she was not married; and that during the six months period immediately preceding the filing of defendant's petition, the plaintiff had left the minor child with defendant's parents on the average of five days a week. The petition further recited that although the defendant was a fit and proper person to have custody of Heather, that the best interests of the child

would be served by granting custody to his parents because he would be unable to give Heather the constant care and attention she required.

At the hearing on the defendant's petition, evidence was adduced that showed Heather, who was 2½ years old at the time, to be a special child who had been born with a deformed skull and was subject to seizures and frequent illnesses. Nancy Soldner testified that she lived in her father's home from the time of her divorce from the defendant in May 1975 until February 1977, at which time she moved into the first floor of a rented house with Heather and Jill, her six-year-old daughter from a previous marriage. She described the first floor as having four rooms and comfortably heated by a single space heater located in the living room. She admitted that her boyfriend was a frequent overnight visitor in her house and that she had sexual relations with him during his visits, but only when Heather and Jill were not there. She related that she began dating him in October 1976, after he showed her his legal separation papers but that he was not actually divorced until March 1977. The plaintiff stated that she was unemployed, but that she worked part-time in a hardware store for several months until she was forced to quit her job in January 1977, because of Heather's illness and subsequent hospitalization. At the time of the hearing, her monthly income was $320 which was derived from unemployment compensation, alimony and child-support payments. She also stated that her father frequently helped her financially, and that she had never received any financial assistance from the defendant or his family, other than child support.

The plaintiff testified that since January 1977, she had frequently left Heather with the defendant's parents for several days at a time. She explained that the defendant's parents insisted on exercising their son's visitation rights; although, the defendant was frequently away from the area and often out of the State. In this regard, she stated that on one occasion she told the defendant's parents that Heather was ill and could not stay with them for the weekend. However, the plaintiff eventually allowed the defendant's parents to take Heather for the weekend after they told her that their lawyer said they were entitled to pick up Heather regardless of her illness unless she was hospitalized. The plaintiff related that it was difficult to find a babysitter for Heather, other than the plaintiff's father and the defendant's parents, because of the child's seizures. She explained that she frequently needed a babysitter for Heather because she was often out of her home during the day shopping, doing laundry and taking Jill to and from school. She also cited the extreme weather and hazardous driving conditions of the first three months of 1977 as reasons for Heather's extended visits with the defendant's parents. According to the plaintiff, Heather suffered from

various illnesses, including chicken pox, during this period and was in fact hospitalized for eight days in January 1977. The plaintiff herself suffered from acute bronchitis the first two weeks of April 1977, necessitating her leaving Jill with her father and Heather with the defendant's parents during that period. The plaintiff stated that her concern was for the health of her children and that even when Heather stayed with the defendant's parents she frequently advised them regarding the child's medication needs. The plaintiff also stated that she had Heather tested to determine whether she could potentially suffer from any future learning disabilities. In this regard, the plaintiff testified that the child was scheduled to be retested, but that the defendant's parents, who had a few days earlier refused to return Heather to the plaintiff, failed to take the child to be tested. The plaintiff finally testified that at no time during the several months in question did the defendant's parents ever object or complain of the frequency of Heather's visits or the length of her stay with them.

Mary Soldner, the defendant's mother, testified that prior to January 1977, Heather usually stayed in her home every weekend and at times approximately three days during the week. Her testimony regarding the period of January through mid-April, 1977, was more specific and generally indicated that Heather had stayed with the elder Soldners an average of five days a week. She acknowledged that Heather was frequently ill during this period and that she had often been ill when she was brought to their home by the plaintiff. She admitted that the plaintiff had never showed a lack of concern for Heather and that she would usually go to the Soldner's home when called regarding Heather's seizures or illnesses. On one such occasion, Mary Soldner caused the plaintiff to go to Soldner's home to take Heather's temperature because she was having difficulty herself reading the thermometer. She also admitted that neither she nor her husband had ever objected to the frequent and extended visits by Heather in their home. She gave no testimony which contradicted the plaintiff's stated reasons for leaving Heather with them so frequently.

The defendant testified that although he desired to have custody of Heather, he was frequently out of the State and, thus, could not give Heather the close attention she required. The defendant requested that custody of Heather be transferred from the plaintiff to his parents.

Harold Bookout, the plaintiff's father, testified that his daughter and her two children lived with him for almost 2½ years until moving into their own house in February 1977. Bookout related that the plaintiff found it difficult to find a babysitter for Heather because of her physical malady, and that it was natural for her to leave the child with relatives since her ex-husband was never around. Bookout, a professional educator, stated that Heather would possibly be a slow child and would need special preschool

attention and training. Bookout added that both he and the plaintiff would be willing to help train Heather and assist her in this area. He further testified that Heather had been tested twice, but had not seen a psychologist as scheduled because the defendant's parents' attorney had said it was unnecessary. Bookout described the plaintiff as a normal, loving mother and stated that Heather idolized Jill.

At the close of all the evidence, the trial court found defendant's allegations in his petition had been proved and that a permanent change of custody of Heather was in the child's best interest. The court then transferred custody of Heather to the defendant, but subject to actual physical custody by the defendant's parents. It is not here alleged, nor did the trial court find, that the plaintiff was an unfit parent.

On appeal, the plaintiff contends that the trial court's transfer of custody of Heather to the defendant and his parents was an abuse of discretion. The plaintiff also contends that the defendant failed to sustain his burden of showing a sufficient change of circumstances since the entry of the divorce decree or that the best interests of the child necessitated a change in custody.

The plaintiff initially argues that the trial court's order granting custody of Heather to the defendant with the understanding that the present care of the child would be provided by the paternal grandparents was an indirect grant of custody to the defendant's parents. The plaintiff contends that because the defendant will not have physical custody of Heather, this court is required to make the same findings as to the fitness of the mother before transferring custody to the grandparents indirectly as it would to do so directly. In this regard, the plaintiff argues that before custody of a child may be transferred from a natural parent to a third party, the trial court must first find that the natural, custodial parent is unfit or has abandoned the child. The defendant contends that even if the effect of the trial court's order was to grant custody indirectly to the paternal grandparents, no finding of unfitness or abandonment by the plaintiff was necessary to support the court's ruling, only a change of circumstances affecting the child's best interests.

■ It has been consistently held by the courts in this State that the essential policy consideration in determining custody is the best interest and welfare of the child. (*In re Stilley*, 66 Ill. 2d 515, 363 N.E.2d 820 (1977); *Chodzko v. Chodzko*, 66 Ill. 2d 28, 360 N.E.2d 60 (1976); *Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300 (1952).) This principle holds true even where a third party seeks custody, for the parent's natural rights must give way to the welfare and best interest of the child. (See *People ex rel. Edwards v. Livingston*, 42 Ill. 2d 201, 247 N.E.2d 417 (1969).) In this regard, it is not necessary that the natural parent be found unfit or be found to have legally forfeited her rights to custody, if it is in the child's

best interest that she be placed in the custody of someone other than the natural parent. (*Eaton v. Eaton*, 50 Ill. App. 3d 306, 365 N.E.2d 647 (1st Dist. 1977).) Nevertheless, the cases recognize that a natural parent has a superior right to the custody of a child which will prevail when otherwise in accord with the child's "best interest," admittedly a somewhat nebulous standard. *Giacopelli v. Florence Crittenton Home*, 16 Ill. 2d 556, 158 N.E.2d 613 (1959); *Look v. Look*, 21 Ill. App. 3d 454, 315 N.E.2d 623 (3d Dist. 1974).

In *Cebrzynski v. Cebrzynski*, 63 Ill. App. 3d 66, 379 N.E.2d 713 (1st Dist. 1978), the natural mother appealed the trial court's order granting joint and mutual custody of her three minor children to their stepmother and herself with actual physical custody to the stepmother alone and visitation rights to the natural mother. The court rejected the mother's contention that she need be found unfit in order to deprive her of custody of her children following the death of her ex-husband, the custodial parent. Instead, the court reviewed the cases in which custody was awarded in derogation of the natural parent's right to custody and reasoned that in such a custody dispute a compelling reason must be shown demonstrating why the natural parent should·not have custody. In examining the trial court's decision, the *Cebrzynski* court noted that at the time of the trial court's order the minor children had been living with their stepmother for almost 3½ years and that the psychiatric testimony given at trial indicated that a change in the children's environment would be potentially hazardous to them. In addition the court appointed guardian ad litem and a case worker from the Department of Supportive Services both recommended to the trial court that the children should remain with their stepmother. On the basis of these facts, the court held that the trial court had been presented with evidence which provided a compelling reason for denying the natural mother actual physical custody and affirmed its decision.

■■ ■ In accord with *Cebrzynski* and prior decisions involving child-custody disputes between a natural parent and a third party, we are of the opinion that convincing grounds must be proved demonstrating that the natural parent should not have custody before custody may be transferred from or denied to a natural parent in favor of a third party, the primary concern being the child's interest and welfare. We are also of the opinion that no distinction should be drawn between the factual situation where legal custody of a child is awarded to a third party and that where only physical care and custody is so awarded. We agree with the plaintiff that the focus should be on the parties who have the daily care and custody of the child, for it is they who directly affect the child's welfare and shape the moral and emotional environment in which the child lives. Hence, we must determine, in view of the foregoing principles of law,

whether it was sufficiently shown that Heather's best interests and welfare dictated that her custody be transferred to the defendant's parents.

As part of his contention that a material change in circumstances had occurred since the entry of the decree of divorce such that Heather's best interests would be served by transferring custody from the plaintiff, the defendant presented evidence concerning the condition of the house into which the plaintiff moved in February 1977. While the house was certainly not palatial, there was no evidence adduced that indicated the child's environment was detrimental to her physical or mental well being. The defendant also produced evidence of the plaintiff's sexual activities in her home with her boyfriend. However, as the plaintiff and her boyfriend related, these activities were not in the presence of her children. In this regard, her behavior was not determinative of her right to continued custody of Heather absent proof that it had a detrimental effect on the child. See *Eaton v. Eaton*, 50 Ill. App. 3d 306, 365 N.E.2d 647 (1st Dist. 1977).

The defendant's main criticism of the plaintiff in the trial court, and now on appeal, was directed at the numerous occasions she entrusted Heather's care to the child's paternal grandparents during the early months of 1977. The defendant contends that this transfer of possession of the child was more than simply babysitting, but instead amounted to an attempt by the plaintiff to free herself from the care and responsibility of the child. While we agree with the defendant that the child spent perhaps more than a normal amount of time away from her mother during this period, we note that Heather is not a normal child. The plaintiff testified that because of the child's needs for constant care and attention she often entrusted her care to the defendant's parents who never objected or questioned the frequency or length of the child's visits. In fact, the defendant's parents apparently insisted on exercising the visitation rights granted to their son in the decree of divorce.

■ We are mindful that the trial court had the superior opportunity to observe the demeanor and conduct of the parties and the witnesses and determine the best interests of the child. (*In re Stilley*, 66 Ill. 2d 515, 363 N.E.2d 820 (1977); *Marcus v. Marcus*, 24 Ill. App. 3d 401, 320 N.E.2d 581 (1st Dist. 1974).) However, the trial court's discretion is not unlimited, but is subject to review and will be reversed if exercised in a manner contrary to the manifest weight of the evidence. (*Comiskey v. Comiskey*, 48 Ill. App. 3d 17, 366 N.E.2d 87 (1st Dist. 1977).) In this regard, we cannot say, especially in view of the reasons given by the plaintiff for the frequent and extended visits by Heather with her grandparents, reasons not contradicted by the defendant, that the evidence indicated that the child's best interests would not be served by her mother's continued custody. Unlike *Cebrzynski v. Cebrzynski*, there was no medical or unbiased

evidence adduced which tended to show that her mother's continued custody would be detrimental to Heather's health or well being. This is not to say that such evidence is always necessary to justify transferring custody from a natural parent to a third person; however, it is a recognition and reaffirmance of a natural parent's superior right to custody absent compelling evidence to deny that right. Our review of the testimony and arguments presented in this cause requires the conclusion that Heather's best interest and welfare lie with being raised by her mother and that the order of the trial court transferring custody to the defendant and his parents is contrary to the manifest weight of the evidence. We find no significant change of circumstances warranting the removal of custody from the natural mother.

We would add that both the mother and father and grandparents are to be commended for their great sensitivity to Heather's special problems. It will be in Heather's best interest that all who are concerned in her well-being display the same concern and affection in the future as they have in the past.

For the foregoing reasons, the order of the Circuit Court of Marion County is reversed.

Reversed.

G. J. MORAN, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

Feeling that the majority opinion is an unwarranted reversal of the trial court's exercise of discretion, I respectfully dissent.

The law pertaining to the situation with which we are presented in this case is well settled and the majority cites cases that are unquestionably in the mainstream of litigation involving child custody. There are many others that could have been cited, many of which have placed children in the custody of those other than their natural parents because it was in the "best interest" of the children. This latter rule has often been applied despite the fact that the natural parents have been found fit to have custody. Examples of such cases are: *People ex rel. Edwards v. Livingston,* 42 Ill. 2d 201, 247 N.E.2d 417 (1969); *Cebrzynski v. Cebrzynski,* 63 Ill. App. 3d 66, 379 N.E.2d 713 (1978); *Look v. Look,* 21 Ill. App. 3d 454, 315 N.E.2d 623 (1974); *Mackie v. Mackie,* 88 Ill. App. 2d 61, 232 N.E.2d 184 (1967); *People ex rel. Hermann v. Jenkins,* 34 Ill. App. 2d 255, 180 N.E.2d 359 (1962).

Two common threads interlace these and all other cases involving child custody. One is that "best interest" or "best welfare" of the child will be followed in making an award of custody and the other is that there is a

broad discretion vested in the trial court and great credence is attached to its determination.

My disagreement with the majority centers on what I believe is its unwarranted disregard of the trial court's decision. It is plain to me that the majority has substituted its discretion for that of the trial court rather than confine itself to a review of that discretion.

The most often-cited version of the rule which assigns great credence to the decision of the trial court is the following from *Giacopelli v. Florence Crittenton Home*, 16 Ill. 2d 556, 566-67, 158 N.E.2d 613, 619 (1959):

> "Finally, the trial judge had the best opportunity to observe the parties and their conduct and demeanor while testifying. This is a vital factor in evaluating the correctness of his determination. We should not disturb his findings unless they are palpably against the weight of the evidence."

There are many variations on this same theme, as this from the *Cebrzynski* case:

> "In custody cases great discretion must be vested in the trial court because it has the superior opportunity to evaluate the evidence and determine the best interests of the children. [Citations.] The trial court's determination of custody rights will be reversed only if it has clearly abused its discretion or if the decision was contrary to the manifest weight of the evidence." *Cebrzynski v. Cebrzynski*, 63 Ill. App. 3d 66, 74, 379 N.E.2d 713, 718-19 (1978).

Seriousness beyond the ordinary is attached to this case because of the grave disability of the child in question. As the majority noted she is not a normal child, and even the plaintiff testified that she required constant care and attention. In view of this it is obviously of the greatest importance that the child have constant, watchful, dependable care. A reading of the transcript makes it obvious that the trial court carefully considered the circumstances of each party from the standpoint of which would best be able to care for this special child. His conclusion, from firsthand observation, was that the child's best interest lay with its paternal grandparents. It has been they who have furnished thus far in the child's life the dependable care and nurture required by her peculiar condition. The demonstrated attitude of the mother toward the child does not inspire confidence in her ability or dependability, and, of perhaps greater importance, her attitude toward her responsibility. The history of her treatment of the child and her lifestyle do not bode well for this child. The trial court undoubtedly considered all these factors in placing this child with her paternal grandparents. I see nothing in this record that would justify a reversal of the decision of the trial court.