107 Ill. App.3d 913 (1982)
438 N.E.2d 658
In re CUSTODY OF DAWN MARIE ROBERTS, a Minor.  (WAYNE ROBERTS et al. Petitioners-Appellants,
v.
JANET FOX, a/k/a Janet Roberts, Respondent-Appellee.)
No. 81-854.
Illinois Appellate Court  Second District.
Opinion filed July 16, 1982.
*914 Ronald A. Gullstrand, Ltd., of Aurora, for appellants.
Bruce F. Bowman, of Aurora, for appellee.
Judgment affirmed.
JUSTICE VAN DEUSEN delivered the opinion of the court:
Wayne and Mary Roberts appeal from the January 21, 1981, order of the trial court which modified a previous custody order of February 16, 1978, and transferred custody of Dawn Marie Roberts from them to Janet *915 Fox. Also, they appeal from the October 2, 1981, order denying their petition for post-judgment relief. Wayne and Mary Roberts are the parents of Janet Fox, and Janet Fox is the natural mother of Dawn Marie.
On appeal, Wayne and Mary Roberts first contend that the trial court's decision granting Janet's petition for change of custody was contrary to the manifest weight of the evidence and that the trial court had applied an improper burden of proof in determining the best interest of the child under the guidelines of section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602).
 1 At the outset, we point out that neither the original grant of custody of Dawn Marie to her grandparents nor the award of custody to her mother, Janet Fox, at issue in this matter, involved a proceeding under the Illinois Marriage and Dissolution of Marriage Act. The provisions of that Act are not applicable to this matter. In re Custody of Townsend (1981), 86 Ill.2d 502, 509; see Ill. Rev. Stat. 1979, ch. 40, par. 102; 86 Ill.2d 502, 517-18 (concurrence in part and dissent in part).
 2, 3 In a custody determination, a third party seeking to obtain or retain custody of a child has the burden of overcoming the presumption that a natural parent has a superior right to custody; further, the third party must show that it is in the child's best interest that the third party be awarded the care, custody and control of the minor. (In re Custody of Townsend (1981), 86 Ill.2d 502, 510-11, 515; People ex rel. Edwards v. Livingston (1969), 42 Ill.2d 201.) In this regard, the claim of third parties, who, like Wayne and Mary Roberts, have had actual and legal custody for a substantial amount of time is entitled to significant weight.
"It is obvious that in a custody dispute a court should give weight to the claim of a third person who has had actual or legal custody of the child for a substantial period of time, especially if the evidence shows that the child has become an integral member of a true family unit. [Citations.] But however important this factor may be in a given case, it does not rise to the level of a presumption so as to `neutralize' the superior-right doctrine or transpose the superior right from the natural parent to the third person. It remains simply a factor to consider in ascertaining what will best serve the interests of the child." (In re Custody of Townsend (1981), 86 Ill.2d 502, 515.)
It should be added that, although the burden is on the third party to overcome the superior-right presumption in favor of the natural parent, the best interest of the child is the standard, and it is not necessary that the natural parent be found unfit or be found to have legally forfeited her rights to custody, if it is within the best interest of the child that she be placed in the custody of the third person. People ex rel. Edwards v. Livingston (1969), 42 Ill.2d 201, 209.
*916 With these guidelines in mind we have reviewed the record in this matter. Janet Fox gave birth to Dawn Marie on May 30, 1977. At that time she was 17 years old, unmarried, not employed, and had a ninth-grade education. She and her child lived with her parents, Wayne and Mary Roberts, for approximately 7 months after the birth of Dawn Marie, except for a 1-month visit to Texas during which time Janet left her child with Wayne and Mary Roberts. In January 1978, Janet, who was 18 years old and still not married or employed, received a telephone call from her mother, Mary Roberts, who requested that she consider giving her parents custody of the child for insurance and tax purposes. At that time, Janet had no insurance for her child, while her parents, who were working, had an insurance policy that would cover the medical needs of Dawn Marie. Janet agreed to give her mother temporary custody of Dawn Marie.
At the January 1981 hearing, Janet testified that, during the original custody hearing, the judge had asked her if she realized that she was relinquishing custody of the child. Although she had responded in the affirmative, she thought that the change of custody would be temporary. Janet also remarked that she did not discuss the original transfer of custody matter with an attorney because her mother told her there was no need for a lawyer to be present. In Mary's testimony in January 1981, she denied that she had told Janet the change in custody would be temporary but admitted that she had informed Janet that she could reclaim her daughter when she married and settled down. Janet testified that prior to filing the present lawsuit, she requested that her mother return the child to her, but her mother refused to relinquish custody, stating that Janet would have to go to court to regain custody.
Janet's testimony revealed that she had lived in seven different locations since relinquishing custody of her daughter 3 years earlier. However, she testified she had visited with her child almost every week since Wayne and Mary Roberts were granted custody in February 1978, though Mary testified that sometimes Janet waited 2 weeks before calling to inquire about the child. At the time of this appeal, both Janet and Mary testified, Janet visited Dawn Marie 2 or 3 days a week. On those occasions she picked up Dawn Marie at Wayne and Mary Roberts' residence and brought her to her marital home for overnight visits.
Janet did testify that, at times, when she would take Dawn for 2- or 3-day visits, the child would become upset and ask to go home to her grandparents, and Mary's testimony on this matter conformed to Janet's. According to Mary, occasionally when the child would visit Janet, Janet would call Mary and inform her that the child was upset and wanted her. On several occasions when Mary arrived at Janet's home to pick up *917 Dawn, the child was crying. To the best of her knowledge, Mary testified, the child never requested that Mary take her to Janet's home.
During the time her parents had custody of Dawn Marie, Janet further testified, she had not given them any financial assistance to defray the cost of caring for the child because her parents did not ask her for any money. However, Janet said she did buy clothes for her daughter on a regular basis when she was employed, but she had not been able to do so regularly for the past 14 months, because she was unable to work due to pregnancy and the raising of her infant son.
Janet also related that upon a recent Sunday visit to her parents' home she noticed that the home was "really messy" with garbage strewn on the floors, dishes on the cupboards, and clothes lying all over the house. Mary's testimony, on the other hand, described garbage collected in the kitchen and dirty laundry strewn on the stairs to the basement at Janet's house. When she visited her parents, Janet also observed that her daughter was dirty and constantly had colds. She admitted, however, that the child played outside at her parents' farm and that she was likely to get dirty doing so.
Also at the hearing in January 1981, Janet testified that she was married to Rick Fox and had been his wife for a year and a half, and they had a 5-month-old child as a result of the marital relationship. At the hearing, Rick testified that he had had a steady job for the past 39 months and was earning $19,500 per annum. His medical and dental insurance policy would provide full coverage for Dawn Marie if his wife were granted custody of the child. Rick was willing to accept Dawn into the household and assume the financial responsibility of supporting her. He further testified that he had known the child since she was 3 months old, that she referred to him as "daddy" and that he felt as if she were his own. Janet testified that she and her husband loved Dawn Marie very much and wished to have custody of her so that they could raise her in the same household with their other child.
Wayne and Mary Roberts were 60 and 57 years old, respectively, at the time of the custody hearing. Neither Mary nor her husband was employed at that time and had not been employed since July 1980. However, they were receiving unemployment compensation, and their combined unemployment compensation amounted to $530 every two weeks. Mary anticipated that their unemployment compensation would terminate in August 1981. Due to their unemployed status, the petitioners did not have medical insurance for the child. In addition, Mary related that she and her husband raised horses and cattle and then sold them. In 1980, they received $3,900 from the sale of their animals. They had $3,000 in a checking account and held 60 shares of stock of unknown value. Also, *918 they owned and lived on a 10-acre farm, although the bank held a $19,000 mortgage on that property. The mortgage payments were $3,000 per annum; taxes on the property were $400 per year, while the yearly insurance premium was almost $300. Mary also stated that she intended to take sewing classes and get a job she could do at home.
In her testimony, Mary Roberts further remarked that she bathed Dawn six or seven times a week and even more frequently during the summertime. In addition, she and her husband had bought the child numerous toys, animals, and clothes. Mary also testified that Dawn referred to her as "mommy."
There was testimony at the hearing that Janet and Rick Fox used marijuana. Rick denied that he used marijuana or allowed it to be used in his home. The trial judge found that no evidence had been adduced of any use of marijuana that impaired the mother's care of the child.
 4 At the completion of the custody hearing on January 21, 1981, the trial court observed that Dawn Marie was fortunate in having both loving grandparents and a loving mother and that the grandparents were to be commended for assuming custody of Dawn Marie when they did. He found nothing in the record to show "that anything [had] changed to the detriment of their good care of this child." However, as the trial judge observed, "no custody order is final." Hohenadel v. Steele (1908), 237 Ill. 229, 235.
 5 Parties cannot by their agreement surrender the rights of a child, and, upon a material change in the condition of the parties affecting the welfare of the child, the court will change a custody decree where necessary, on proper application. (Hohenadel v. Steele (1908), 237 Ill. 229, 235.) Therefore, Janet's agreement to surrender custody of Dawn Marie to her parents in February 1978 did not foreclose her later petition for modification of the custody order. As the trial judge observed, the mother had "quieted down" and "readjusted herself" since the February 1978 hearing, she had married a man who would support her without her working and had a small child with whom Dawn Marie should be raised. Given the totality of the circumstances, the court found, the best interests of the child required that she be placed in the custody of her natural mother, and the order of January 21, 1981, so provided.
 6, 7 In custody cases, great discretion must be vested in the trial court because it has the superior opportunity to evaluate the evidence and determine the best interests of the child. The trial court's determination of custody rights will be reversed only if it has clearly abused its discretion or if the decision was contrary to the manifest weight of the evidence. (Cebrzynski v. Cebrzynski (1978), 63 Ill. App.3d 66, 74.) Our review of the evidence, in light of the guidelines established by In re Custody of Townsend (1981), 86 Ill.2d 502, and People ex rel. Edwards v. Livingston (1969), 42 Ill.2d 201, leads us to conclude that the finding of the trial court *919 as to the best interests of Dawn Marie and its judgment awarding custody to Janet Fox, the natural mother, were not against the manifest weight of the evidence. The record in this cause establishes that the trial judge carefully exercised his discretion with full awareness of the importance of his decision to the child and to those who sought custody of her. Cebrzynski v. Cebrzynski (1978), 63 Ill. App.3d 66, 74.
We find no abuse of discretion nor, as we have said, does the record show that the court's decision was contrary to the manifest weight of the evidence. Accordingly, that decision will not be disturbed. Cebrzynski v. Cebrzynski (1978), 63 Ill. App.3d 66, 74.
 8 Wayne and Mary Roberts' next contention, that the trial court erred in failing to appoint on its own motion a guardian ad litem to represent the interests of the minor child, is without merit. They neither requested nor suggested prior to or at the time of trial that a guardian be appointed. Such appointment on the court's own motion is subject to the sound discretion of the trial court, and the failure of the court to sua sponte appoint a guardian ad litem is not an abuse of discretion. (De Franco v. De Franco (1978), 67 Ill. App.3d 760, 771-72; Rathke v. Peebles (1975), 31 Ill. App.3d 711, 715.) Based on our examination of the record in the instant case, we find that the child's interests were vigorously asserted and that appointment of separate counsel was not required. Pierson v. Bloodworth (1980), 81 Ill. App.3d 645, 652-53.
 9 The last assignment of error is that the trial court erred in dismissing a petition for change of custody which Wayne and Mary Roberts had filed on September 24, 1981, and in which they requested that their granddaughter be returned to them. Their notice of appeal makes no reference to the trial court's order of October 30, 1981, which dismissed their petition for change of custody. The notice of appeal refers only to the order of January 21, 1981, which awarded custody of the child to Janet Fox and the order of October 2, 1981, which denied Wayne and Mary Roberts' motion to vacate the order of January 21. Because the appellants failed to designate in their notice of appeal that they were appealing from the court's order of October 30, 1981, the same is not before us and cannot be considered on appeal. (73 Ill.2d R. 303(c)(2); Moseley v. Goldstone (1980), 89 Ill. App.3d 360, 365; Mooring v. Village of Glen Ellyn (1978), 57 Ill. App.3d 329, 331.) Even if the issue were properly before this court, our review of the record indicates that the trial court properly dismissed the petition.
For the reasons set forth above the judgment of the trial court is affirmed.
Affirmed.
SEIDENFELD, P.J., and UNVERZAGT, J., concur.