*In re* CUSTODY OF CARRIE ANN HENKINS, a Minor—(Kenneth Henkins, Petitioner-Appellee, *v.* Dennis Snow *et al.*, Respondents-Appellants).

Third District No. 82—485

Opinion filed August 23, 1983.

BARRY, J., dissenting.

Susan Dawson-Tibbits, of Prairie State Legal Services, Inc., of Peoria, for appellants.

Robert A. Barnes, Jr., of Barnes & Barnes, of Lacon, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This case involves a custody dispute between the natural mother of a minor child and the maternal grandfather of the child. The circuit court of Marshall County entered an order awarding custody of the child to the maternal grandfather, Kenneth Henkins. The mother, Sherry Snow, appeals from that order.

Sherry at age 20 and unmarried gave birth to a daughter, Carrie Ann Henkins, on October 14, 1975, who is the subject of the custody dispute. After her birth the child, Carrie, was taken to the home of her grandparents, Mr. and Mrs. Kenneth Henkins. The home is near Lacon, Illinois, and with the exception of brief periods of time Carrie has always been with the Henkins. The mother, Sherry, also returned to her parents' home, but off and on absented herself for long periods of time, leaving her whereabouts unknown. The mother, Sherry, testified that while living with her parents she took care of Carrie by bathing, feeding and playing with her. She did admit that on occasions

she left her parents' home taking Carrie with her and that she did not inform her parents of her whereabouts because it was none of their business.

During one of the absences Mr. Henkins found his daughter, Sherry, and Carrie living at the Lacon Marina in a camping trailer. Mr. Henkins testified that the trailer was unheated and the temperature was in the 40's. Sherry's testimony was to the contrary in that she stated that she and Carrie stayed at the Marina in the summertime. Mr. Henkins further testified that on another occasion he found Sherry and Carrie at the Nighsonger residence, which was completely run down and dirty and had no modern facilities. Sherry's testimony was to the contrary. She stated that she only visited the Nighsonger residence occasionally.

Sherry moved out of her parents' home in June or July of 1978 and in August of that year she married Dennis Snow. It was Sherry's testimony that she left Carrie with her parents until she and her husband were better situated financially.

In May of 1979 Sherry and her husband moved into a two-bedroom trailer. The Henkins refused to return Carrie to her mother because they did not believe that she and her husband were financially able to care for her. At this time Dennis Snow was earning from $150 to $165 per week. For a portion of the time the trailer was without heat or electricity.

In November 1979, Carrie, while visiting her mother, suffered a severe burn on her leg when a coffee pot was accidentally overturned. As the result of this injury Carrie underwent two skin graft operations. Sherry testified that no more skin graft operations would be needed, while her grandfather testified that he believed more would be needed, but Carrie's doctor would not make that decision for another six months. The pertinence of this testimony concerns medical insurance coverage. The grandfather, Henkins, is a longtime employee of Caterpillar Tractor Company, and Carrie is covered by his extensive medical policy with that company.

In July of 1981 Dennis Show was charged with driving while intoxicated. A friend, George Pelphrey, posted bail and offered Dennis a job at his bait and tackle business if Dennis would stop drinking. According to Sherry, Dennis and the Pelphrey's, Dennis did stop drinking, is employed by Pelphrey and is earning $150 per week take home pay. Shortly before the custody hearing Sherry and Dennis moved into a residence with the Pelphrey's where with Carrie they were to have the use of two bedrooms and were to share the use of the kitchen and living room. The Pelphrey's have four children.

The facts when analyzed disclose that when Sherry married Dennis Snow she voluntarily left Carrie with the Henkins for a period in excess of two years. The custody action was prompted when Sherry removed Carrie from school near the end of a school term and without prior notification to the Henkins.

The record further establishes that there has been occasional domestic violence between Sherry and Dennis and that Dennis Snow has failed to support children of his from a prior marriage.

This action was commenced when the grandfather sought to obtain the return of Carrie by petitioning the court for a writ of *habeas corpus*. The court ordered the writ to issue and later entered a temporary custody order placing Carrie with her grandparents. Dennis and Sherry obtained the services of an attorney from legal aid and filed a counterpetition for child custody and a response to the petition for writ of *habeas corpus*. As previously set forth, the custody of Carrie was awarded to the maternal grandfather, Kenneth Henkins.

The Snow's first assign as reversible error that the trial court failed to use the proper standard in determining the right to custody of the minor child.

It is the contention of the Snow's that the superior-right doctrine should have been applied, the effect of which is to recognize that there is a presumption that a natural parent has a superior right to custody of a child over the claim of a third party. In support of this agreement the Snow's cite the case of *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231. The facts in *Townsend* are too bizarre to be in any way equated with the facts in the instant case. In *Townsend* the natural father prevailed in a custody dispute with the stepdaughter of the child's mother. The mother had been convicted of murdering the wife of the natural father. The reviewing court in *Townsend* did give lip service to but not full blessing to the superior right doctrine relied on by the Snow's in the instant case. In *Townsend* the court stated:

> "In child-custody disputes it is an accepted presumption that the right or interest of a natural parent in the care, custody and control of a child is superior to the claim of a third person. The presumption is not absolute and serves only as one of several factors used by courts in resolving the ultimately controlling question of where the best interests of the child lie. (See *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201; [citations].)" 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234.

We note that the case of *Townsend* cites the case of *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417. In

*Livingston* our supreme court in a *habeas corpus* proceeding instituted by a natural father held that the natural father was not upon the death of natural mother entitled to custody as against maternal grandfather with whom the minor child had been living for 11 years. The supreme court held that to be determined is what is in the best interests of the child. In *Livingston* the court stated:

"The best interest of the child is the standard and it is not necessary that the natural parent be found unfit or be found to have legally forfeited his rights to custody, if it is in the best interest of the child that he be placed in the custody of someone other than the natural parent. See *Giacopelli v. The Florence Crittenton Home,* 16 Ill. 2d 556; 67 C.J.S. Parent and Child sec. 11; 27 Am. Jur., Infants sec. 108; and also see *Halstead v. Halstead,* 259 Iowa 526, 144 N.W.2d 861.

Again, in *Giacopelli* at page 565 we stated: 'The parent need not be shown to be totally unfit to rear the child in order to deny to him the custody of the child. Fitness of the parent is only one of the factors to be considered in determining how the best interest of the child may be served. The sufficiency of the parents' home, its surroundings, and all other matters that have a bearing upon the welfare of the child are to be considered. (*People v. Weeks,* 288 Ill. App. 262.) The parents' natural rights must give way to the welfare and best interest of the child.' " 42 Ill. 2d 201, 209, 247 N.E.2d 417, 421.

This court has recognized and followed "the best interest rule." (See *Look v. Look* (1974), 21 Ill. App. 3d 454, 315 N.E.2d 623, *Barclay v. Barclay* (1978), 66 Ill. App. 3d 1028, 384 N.E.2d 564.) In the case of *Look* this court made the following observation:

"In proceedings affecting the custody of a child, the primary consideration is the present and prospective welfare of the child, or, as otherwise stated, the best interests of the child. Naturally, no hard-and-fast rule can be laid down as to what will best serve the welfare and interests of a child. Each case must be determined according to its own circumstances and the question rests largely in the sound discretion of the trial court. When the people having the actual custody of the child at the time a change is sought have properly provided and supervised its needs for a substantial period of time and the child has become attached to the environment and to the grandparents who have made possible the happiness, security and comfort of its early years, a court is not justified in transferring that custody to another, except for the most cogent reasons. When people,

through the goodness of their hearts, take a child into their home and lavish on it their affection and care, they are entitled to much consideration in an action involving the custody of such child. *Jarrett v. Jarrett,* 348 Ill. App. 1, *aff'd* 415 Ill. 126." 21 Ill. App. 3d 454, 457-58, 315 N.E.2d 623, 625-26.

We set forth the foregoing language from the case of *Look* since the same is applicable to the situation presented in the instant case. Carrie, the minor child, was six years of age when the custody hearing was held by the trial court. The Henkins provided the care for Carrie throughout this six-year period. They provided for the needs of the child including extensive medical care. We cannot conclude that Carrie would have an environment of stability and security such as she has enjoyed with her grandparents. The trial court determined that the best interests of Carrie would be served by permitting her to remain with her grandparents, and the record in this case does not provide compelling reasons why the trial court's determination should not be upheld.

Having reached this determination, it is not necessary that other issues raised in this appeal be considered.

For the reasons set forth the judgment of the circuit court of Marshall County is affirmed.

Affirmed.

ALLOY, J., concurs.

JUSTICE BARRY, dissenting:

I would reverse the judgment of the trial court and remand this cause for a further hearing as to the present circumstances of the parties who are seeking custody of Carrie Ann Henkins.

According to the statement of the trial court at the hearing on the post-trial motion, the court found that the "weight of the evidence was for the best interest of the child to remain with the grandparent." This statement does not indicate that the court gave any consideration or recognition to the presumption that a parent has a superior right to custody as against a third party. Although admittedly the presumption is not a conclusive one, the third party seeking to obtain or to retain custody must show that the best interest of the child *requires* custody to be awarded to the third party. (*In re Custody of Townsend* (1981), 86 Ill. 2d 502, 510-11, 427 N.E.2d 1231, 1235-36.) In my opinion, the fact that the circumstances in *Townsend* were "bizarre," as the majority characterizes them, does not invalidate the

principles of law used by the Supreme Court of Illinois to decide that case.

The *Townsend* court, as the majority notes, relied upon *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417, where the question before the court was whether the natural father could be denied custody without a finding that he was unfit. In that case the parents had been divorced, the mother had had custody for nine years, the father had not seen his son for 11 years though he lived within 30 miles, the mother had died, and the father brought *habeas corpus* against the maternal grandfather. An important statement of law contained in the *Livingston* decision is:

> "In *Giacopelli v. The Florence Crittenton Home*, 16 Ill. 2d 556, we stated at 565: 'It is always recognized that a natural parent has a superior right to the custody of his child.' " 42 Ill. 2d 201, 209, 247 N.E.2d 421.

This court has followed the same legal principle many times. For example, in *In re Ross* (1975), 29 Ill. App. 3d 157, 168, 329 N.E.2d 333, 341, Justice Jay Alloy stated:

> "In Illinois, a natural parent has superior claim to the custody of his children, but that claim may be overcome in certain circumstances by a showing that the best interests of the child *require* custody in some other party. [Citations.] This does not mean that children can generally be taken away from their parents by simply making a showing that the children would be better off elsewhere." (Emphasis added.) Accord, *In re Ice* (1976), 35 Ill. App. 3d 783, 786, 342 N.E.2d 460, 462.

As I have indicated previously in cases involving attempts to terminate parental rights, "By someone's standards, it is always possible to find a better home for a child than the one Providence has bestowed. For that reason alone, natural relationships are protected by law unless the unfitness of the parents is demonstrated by clear and convincing proof." (*In re Hrusosky* (1976), 39 Ill. App. 3d 954, 960-61, 351 N.E.2d 386, 391 (Barry, J., dissenting). See also *In re Adoption of Smith* (1976), 38 Ill. App. 3d 217, 227, 347 N.E.2d 292, 300-01.) The same public policy should govern the courts in cases of custody disputes involving natural parents against third parties. Courts should recognize the superior right of the natural parent by giving effect to the presumption that the best interest of the child is with the parent as against third parties, thereby requiring the third party to overcome that presumption in order to prevail.

I would construe *Townsend* as authoritatively clarifying how the superior right of the natural parents affects the burden of proof in

cases where third parties contest a natural parent's right to custody of a child. It seems clear to me that the trial court in the case before us did not consider the grandfather's burden of overcoming the legal presumption that the best interest of Carrie was with her mother. Such an error of law should require a reversal and a remandment.

A reversal is also required because the evidence was inadequate to demonstrate that the best interest of the child was with the grandfather. I have carefully reviewed the transcript of testimony before the trial court. The only evidence relating to the care the grandparents can provide was that the grandfather has medical insurance and that both grandparents have steady employment. There is no evidence describing conditions in the grandfather's home—it is not clear who lives in that home, who cares for Carrie when both grandparents are at work, what activities Carrie participates in, how she performs in school—and there is no evidence as to the age or health of the grandparents.

There is undisputed evidence that the first four years of Carrie's life, both she and the mother lived with the grandparents and that the mother cared for her except for four or five times when the mother left the home for short periods of time. It is only during the past two years that the mother has not had daily care of Carrie, and during that time she has had frequent visitation. I would find the evidence insufficient to establish that the best interest of the child is with the grandparents, even without invoking the presumption in favor of the mother.

The majority opinion relies upon *Barclay v. Barclay* (1978), 66 Ill. App. 3d 1028, 384 N.E.2d 564, and *Look v. Look* (1974), 21 Ill. App. 3d 454, 315 N.E.2d 623, two cases where the best interest of the child was found to be to reside with the grandparents as opposed to a natural parent. In both cases, the natural parent had left the child with the grandparents for substantial periods of time (four years and five years, respectively) before requesting a return of custody to the parent. Those cases recognize that in such situations a parent may be chargeable with *laches* or forfeiture, but such was not the case here where the mother requested custody of Carrie within 10 or 12 months after she left her parents home to marry. Her attempts to regain custody were thwarted by the grandparents, and then she took the action which led to this suit. The fact that the mother agreed to let Carrie stay with the grandparents when the mother first married should not foreclose her later assertion of her parental rights. See *In re Custody of Roberts* (1982), 107 Ill. App. 3d 913, 918, 438 N.E.2d 658, 662.

In summary, I believe the trial court erred as to the burden of

proof in this case, and in any event, the evidence was insufficient to establish that the best interest of the child *required* custody with the grandparents. I, therefore, dissent.