Carol Sholty, Plaintiff, v. Richard Sholty, Defendant-Appellee.

Revere Lowe and Leola Lowe, Intervening Petitioners-Appellants, v. Richard Sholty, Defendant-Appellee.

**Gen. No. 65–39.**

Third District.

January 19, 1966.

Rehearing denied February 14, 1966.

Swain, Johnson & Gard, of Peoria, for appellants.

Morton S. Goldfine, of Peoria, for appellee.

STOUDER, J.

This is an appeal from an order of the Circuit Court of Peoria County modifying a decree of divorce by awarding custody of the minor son of the marriage to appellee.

Appellee Richard Sholty and Carol Lowe, daughter of Revere and Leola Lowe appellants, were married in 1953 and lived together as husband and wife until September, 1956. In December 1956, pursuant to her complaint for separate maintenance, appellee was ordered to pay $15 a week for the support of his wife Carol Sholty. At the time of their separation Carol Sholty was three months pregnant. The only child of the marriage, Richard, was born in 1957 and in February, 1965, at the time of the hearing in the court below, was eight years of age. In January, 1958 Carol Sholty amended her complaint for separate maintenance by praying that a divorce be granted and pursuant to the amended complaint a divorce was awarded to Carol Sholty. The decree provided that the custody of their minor son, Richard, be awarded to plaintiff with right of visitation by appellee and further provided that appellee pay $15 per week for the support of said child and $10 per week alimony. In April, 1964, Carol Sholty became ill, said illness resulting in her death in January, 1965. Thereafter appellee filed his petition asking that the decree of divorce be modified by awarding custody of his minor son to him. Pursuant to leave

granted, appellants as maternal grandparents of the child, filed their intervening petition asking that custody of the minor be awarded to them. This appeal follows from an order awarding custody of the minor to appellee.

The facts as shown by the evidence are not substantially in dispute. After her separation from her husband in September, 1956, Carol Sholty made her home with her parents, appellants herein, and she and her son continued to reside with her parents, after his birth in 1957, until her death. The grandfather assumed the role of father and a bond of love and affection developed between the grandson and his grandfather as well as with his grandmother. Richard referred to his grandfather as "daddy" although in fact Richard was aware that appellee was his father.

The grandfather and grandmother are respectively 50 and 47 years of age. They own their home, located in a suitable section in the city of Peoria. At the time of the hearing the younger daughter of appellants, with her young child, resided in the home, she having been temporarily separated from her husband. The grandfather is regularly employed as a sheet metal worker and the grandmother conducts a beauty parlor in the basement of their home. Their combined income is approximately $11,000 a year. The court heard testimony of the family minister, the grandfather's employer, a neighbor and the grandmother's sister. The substance of this testimony was that Richard was happy, well adjusted and did well in school; that appellants were fine reliable persons; that appellants had demonstrated strong love and affection for their grandson, Richard; and that it would be for Richard's best interest to remain with his grandparents. Appellants also claimed that although appellee visited his son in their home no rapport had developed between appellee and his son.

Appellee, who is 29 years of age, after the divorce in 1958 served in the armed forces for two years and was

recalled for a second tour of duty for one year in 1961 during the Berlin crisis. He is presently employed in the purchasing department of Caterpillar Tractor Company, has had two years college education and is attending night school at Bradley University working on his bachelor's degree. His annual income is approximately $8,200. In July, 1963 Appellee remarried and has one child, with another to be born shortly. He owns the home in which he and his family reside in a suitable section of the city of Peoria. Appellee made all of the payments for the support of his son and alimony to his former wife as required by the divorce decree. He also maintained medical and hospitalization insurance under his employer's insurance program which paid for substantially all of the hospital and medical expenses incident to remedial medical attention required when Richard was five years of age. Appellee's second wife testified that her husband had wanted the custody of his son for a long time but felt that he had no hope of obtaining such custody prior to the death of the first wife. She further testified that she wanted Richard to become a part of their family and believed that it would be best for him.

Although there is some dispute in the evidence concerning the number of times that appellee visited his son during the 1½ to 2-year period preceding the hearing, the variations in the testimony are not great. Appellee testified that he visited his son on an average of every two months. His wife testified that although she kept no records she believed he visited his son approximately nine times during the period. The grandfather testified that appellee visited his son on five occasions during the period and the grandmother thought appellee might have visited his son as many as six times. There was also testimony concerning appellee's visitations of his son prior to the aforementioned period, including testimony that appellee visited his son daily when the son, then age five, was hospitalized. Appellee testified that he was

never able to visit his son except in the presence of appellants or his former wife and that on one occasion when he requested permission to take his son to a baseball game in St. Louis, permission was refused by his former wife.

Both parties state that there is no hostility between them nor was there any hostility or disagreement between appellee and his former wife concerning the care of their child.

Appellants contend that the trial court erred in not finding that it was for the best interest of the minor child that custody be awarded to them or in the alternative that the court should have granted them temporary custody, increased the visitation rights of appellee and delayed a final determination until after a transitional period. Appellants further contend that a custody decree is final and res adjudicata and should not be disturbed unless new facts or circumstances arise and that in effect the previous order would be maintained by awarding custody to appellants.

■ We believe that the exception contained in the rule of Wade v. Wade, 345 Ill App 170, 102 NE2d 356, is applicable to this case. The death of the parent having custody is a significant and substantial change in circumstances. It is obvious in such case that the custodial portion of the divorce decree requires modification, in that custody must be awarded to a different person. In so doing the court must consider the circumstances as they presently exist and cannot be limited to a consideration of the circumstances existing at the time of the original custodial order.

■ ■ It is our opinion, and in fact both parties agree, that the paramount issue is the determination of what will be for the best interest of the minor involved. The superior right of the natural parent to custody of his child can only be determined in the context of the best interest of that child and may be limited by the conduct

of such parent or other circumstances. The task of the trial court in resolving this issue is a difficult one, involving as it does, the welfare of a young boy facing circumstances which he does not understand and prospects for the future which he does not comprehend.

Appellants contend, in light of the foregoing principles, that the order of the Trial Court was not for the best interest of the minor involved and hence contrary to law. Appellants rely on the cases of People v. Weeks, 228 Ill App 262, and Price v. Price, 329 Ill App 176, 67 NE2d 311, in support of their contention that the Court should have awarded custody to the maternal grandparents. These cases recognize the principle that the superior right of a natural parent is not unlimited and affirms the propriety of the trial court's discretion in awarding custody to a person other than a natural parent. However, the factual differences of these cases render the decision inapplicable here. It is apparent that in each of the foregoing cases, a relative other than a parent, had sole and complete custody of the minor for substantial periods of time prior to the institution of the change of custody proceeding by the natural parent. It is also clear that the natural parent consented to or acquiesced in such custodial arrangement voluntarily and such arrangement was not the result of a court determination placing the minor in the custody of one of its natural parents.

██ The relationship between the grandparents and their grandson is only one of the circumstances, although an important one, to be considered by the court. The court is required to consider this circumstance together with all of the other evidence bearing on the welfare of the minor. From the evidence in the record before us, as summarized in this opinion, it appears that both appellants and appellee are fit and proper persons, well able and qualified, to undertake the duties incident to the custody of the minor involved; that appellee by his con-

duct has not forfeited his rights or abandoned his interest in his minor son; that the resources of each party are comparable and adequate; and that appellee's conduct, under the circumstances, has not been inconsistent with his duties and responsibilities as a parent. Viewing the record as a whole we can only conclude that there is sufficient evidence to justify the order of the trial court.

Finding no error in the judgment of the Circuit Court of Peoria County the judgment of the Circuit Court is affirmed.

Judgment affirmed.

CORYN, P. J. and ALLOY, J., concur.