*In re* ESTATE OF EDWARD EUGENE LeCocq, A Minor.

(No. 73-59; ▮▮▮▮▮▮▮▮

Third District—March 26, 1974.

Thomas R. Judd, of Kankakee, for appellant.

Edward G. Vogt, of Kankakee, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Appellant Myrna Pray appeals from an order of the Circuit Court of Kankakee County which granted custody of the person of Edward Eugene LeCocq, a minor, to his natural mother, Billie Banks, who was the divorced wife of the child's natural father.

Renie LeCocq, the natural father, died on April 3, 1972. In his will, which was admitted to probate in the Circuit Court of Kankakee County on May 23, 1972, LeCocq designated petitioner-appellant Myrna Pray and her former husband as the testamentary guardians of the person of the minor Edward Eugene LeCocq. Mrs. Pray and her former husband were divorced following LeCocq's execution of his will. Mrs. Pray filed her petition on June 14, 1972, asking to be named as guardian of the person in accordance with the provisions of the will. Her former husband did not join in the petition and took no part in the proceedings now before us. Mrs. Pray appeals from the Circuit Court's order which denied

her petition and named Billie Banks, the natural mother, as guardian of the person of the minor.

Edward Eugene LeCocq was born June 14, 1966. His parents were divorced on July 15, 1968. His father brought the divorce proceeding, and the decree of divorce was entered by default. In the decree of divorce the court found that the natural mother was unfit to have custody of the child and the decree awarded permanent custody to the father. The ground for divorce upon which the decree was based was the natural mother's adultery. The father had custody until his death, but at various times he allowed the child to live with Myrna Pray and, also, to visit with the natural mother. At the time of the father's death, the child was visiting with his natural mother. Since that time, the child has remained with the natural mother pursuant to order of the Circuit Court of Kankakee County.

It was alleged by appellant in her petition that she was designated as testamentary guardian of the person of the child and that the natural mother, due to the adultery found in the divorce proceeding in 1968, was unfit to have such custody. Billie Banks, the natural mother, answered the petition by requesting a hearing. She also requested that she be named as guardian of the person of her child. Following a hearing before the trial court, the court ruled that the natural mother was a fit person to have custody of the child. The court also found that the best interest of the minor would be served by naming the natural mother as guardian of the minor's person.

On appeal in this Court, appellant contends that she had only the burden of showing her own fitness to be guardian (as designated by the decedent) and that the natural mother had the burden of showing changed circumstances in order to overcome the presumption of unfitness raised by the 1968 decree of divorce. Appellant also argues that the trial court, having found the child not to be dependent and neglected, erred by applying the "dependent and neglected" test and should have looked only to (1) the fitness of the natural mother, and (2) the best interest of the child.

In addition to the arguments referred to, appellant also contends that the court's decision was not supported by the evidence and that the court should not have permitted the use of a report by the Department of Children and Family Services when the person who made the report was not in court and available to be examined. It appears from the record, however, that the attorney for Mrs. Pray and the attorney for Mrs. Banks stipulated at the hearing that the court could order the Department of Children and Family Services to undertake an investigation and to file its report with the court. This report was received by the court pursuant

to a stipulation of the parties. Since this proceeding was undertaken by the court without a jury and the court-appointed guardian ad litem did not object, we find no reversible error in the procedure, particularly since there is no indication in the record that the report was of any significance in the determination by the court of the issues in this case.

■■ Two statutory enactments in this State have a bearing on the issue before the court at this time. In section 132 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 132), it is provided:

> "When both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the person of the minor and the direction of his education; and, if one parent is dead and the surviving parent is competent to transact his own business and is a fit person, he is similarly entitled. The parents have equal powers, rights and duties concerning the minor. If the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person."

It is obvious that the trial court in the original divorce proceeding involving Renie and Billie LeCocq found the mother unfit and awarded custody to the father. The father thereafter died and, according to the language in section 132 referred to, "if one parent is dead and the surviving parent *is* competent to transact his own business and *is* a fit person, he *is* similarly entitled." (Emphasis added.) The statutory language indicates that it is the mother's fitness at the time of the father's death, and not at the time of the original divorce decree, which is significant on the issue of custody at such time.

Another statutory provision in this State has some pertinence to the issue before us. In section 144 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 144), it is provided:

> "A parent of a child likely to be born, or of any living child, being a minor and unmarried, may by will designate a guardian of the person and of the estate of such child to continue during his minority or for a less time. *But* if the surviving parent *is* a fit and competent person no such designation shall deprive him of the custody, nurture, tuition, and education of the child or the right to designate by his will the guardian of the person of the child." (Emphasis added.)

The language of section 144 is clearly consistent with section 132 of the same chapter, and likewise directs the inquiry as to fitness of the surviving parent at the time of the death of the parent who predeceases and to the time following such death, when custody of the child is in issue. It is apparent that in each of the sections referred to, the surviving parent

is entitled to custody if the surviving parent is then "fit" within the meaning of the statutory provisions.

The trial court, in the cause before us, specifically found that, at the time of the hearing, Billie Banks, the natural mother, was "fit to have custody of said minor." The court then appointed her guardian of the minor's person. If the finding of fitness by the court is proper, then this court, following the guidelines in the statutory language, should affirm the trial court's order. The court's order included, additionally, a finding that the minor "is not a dependent or neglected child within the meaning of the applicable statute; and that the testamentary request of appointment of Myrna Helen Pray as guardian of said minor is subservant [*sic*] to the best interest and present welfare of said minor." To the extent that the latter two findings may suggest an independent inquiry apart from the fitness question, under the statutory scheme referred to herein, such findings may simply be treated as surplusage. (*Cf. People ex rel. Edwards v. Livingston*, 42 Ill.2d 201, 247 N.E.2d 417 (1969) and *Giacopelli v. The Florence Crittenton Home*, 16 Ill.2d 556, 158 N.E.2d 613.

■■ It is apparent from the statutory provisions to which we have referred that the term "fit" is to be read as relating to the ability of the surviving parent to serve the welfare of the child. We see nothing in the statute which would authorize the court to embark on a question to determine the relative abilities of the surviving parent on the one hand and the testamentary guardian on the other. It appears that the fact of natural parentage is to be accorded much weight on the side of the natural parent in a determination of whether a child's best interests are subserved by having the natural parent as his guardian rather than a designated stranger named in a will of the deceased father. See, *e.g., People ex rel. Edwards v. Livingston*, 42 Ill.2d 201, 247 N.E.2d 417 and *Giacopelli v. The Florence Crittenton Home*, 16 Ill.2d 556, 158 N.E.2d 613.

■■ We recognize that, in the pre-existing decree of divorce, the natural mother had been found to be unfit. Normally a person challenging custody provisions of a decree of divorce and the finding of unfitness, upon which custody award was based, would have the affirmative obligation of proving a substantial change in circumstances. While that proceeding, in effect, constituted a plenary proceeding to determine custody at that time as between the parties, the death of the person in whom custody was vested created, under the guidelines of sections 132 and 144 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, pars. 132 and 144), a proceedings, plenary in nature, to determine custody and to ascertain whether the surviving natural parent then seeking custody is

"fit" at that time. The trial court in a section 132 or 144 proceeding would not be required to reopen the prior divorce proceedings. If Mrs. Banks were attacking the custody provisions in the decree of divorce, she would be required to show a substantial change of circumstance. We believe, however, that even in absence of the statutory provisions to which we have referred, the death of the natural father in itself created a sufficient change of circumstance to permit a new inquiry as to whether Mrs. Banks was then fit to be vested with the custody of the minor child. *Sholty v. Sholty,* 67 Ill.App.2d 60, 214 N.E.2d 15.

In the record before us, we note that Billie Banks has two children of a marriage prior to her marriage to Renie LeCocq; that, at the time of LeCocq's divorce from her, she was pregnant by one Ozzie Banks; that she subsequently married Ozzie Banks but that he left her when she was pregnant with the second of her two children; that Ozzie Banks left while the weather was cold and that she and her children (other than Edward who was in custody of his father) moved in with one Robert Williams, because there was no heat in the Banks' house. She continued to reside with Williams and Williams treated her children equally and loved them as a father. At the time of the hearing she was still legally married to Ozzie Banks but was planning to obtain a divorce in order to marry Williams. It was also shown that the natural mother had failed to contest the divorce proceeding with Renie LeCocq because Renie LeCocq was old and had a bad heart and Edward was "all he had" and that Billie did not want to hurt LeCocq more than she had. Following her divorce from LeCocq, LeCocq and his divorced wife, Billie, became and remained friendly and she was allowed to see Edward frequently. LeCocq was also friendly with her other children, and, at the time of his death, actually was with another son of Billie.

It appears, therefore, that the trial court could have considered that it might be desirable to keep intact the family unit consisting of the minor child Edward, his mother and his brothers and sisters. While the conduct of Billie Banks prior to the time of the hearing might indicate a certain instability, her subsequent conduct was found by the court, apparently, to show greater stability. There is also some intimation that the failure of Mrs. Banks to divorce Ozzie Banks was attributable solely to financial inability. At the time of the present appeal, that divorce from Ozzie Banks had in fact been finalized, and Billie and Robert Williams have been married.

We note, also, that Edward LeCocq, the minor, stayed with his natural mother on frequent occasions prior to the death of Renie LeCocq. It is also noted that while visits were frequent with Mrs. Pray, that in her home were only her mother and four children, and that her

former husband provided support for those children when he could. From the record it could have been noted that there was an instability in the home of appellant and that the minor child would not have a father figure in such home.

■■ In reviewing the record as a whole, we conclude that there was sufficient evidence to support the trial court's finding that the natural mother was fit and also that the best interests of the child would be subserved by appointing the mother as guardian of the person of the child.

An argument was also made by appellee that appellant would have no standing to serve as a testamentary guardian because Renie LeCocq had named both appellant and her former husband as guardians and was thereby expressing an intention that the custody of the child be granted to appellant only if she then were married to her former husband. In view of our disposition of the basic issues in this case, however, we deem it unnecessary to consider or determine this question.

For the reasons stated, the decree of the Circuit Court of Kankakee County will be affirmed.

Affirmed.

SCOTT, P. J., and DIXON, J., concur.