DEBRA GARRISON, Plaintiff, *v.* ROBERT W. GARRISON, Defendant-Appellant.—(NELSON E. TEICHMAN, Intervening Petitioner-Appellee; ALETHA HECTOR, Intervening Petitioner-Appellee.)

Third District   No. 78-178

Opinion filed August 31, 1979.

John W. Howard, of Parkhurst, Fraser, Newlin, and Renner, of Peoria, for appellant.

Norman J. Fombelle, of Burger, Fombelle, Wheeler & Dvorak, P. C., of Decatur, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Robert Garrison, the father of five-year-old Karista Garrison, has brought this appeal from an order of the Circuit Court of Tazewell County awarding permanent custody of Karista to her maternal grandmother, Aletha Hector.

When Karista was six months old, her parents, Robert and Deborah

Garrison, separated, and they were divorced in May of 1975, when Karista was two years old. The mother, who was awarded custody, subsequently married Nelson Teichman on August 30, 1975. In May of 1977, a hearing was held on the mother's petition for a rule to show cause against the father. The trial court found the father to be in arrears $3,140 for child support and ordered him to pay $200 each month on the arrearage and $30 per week future child support. In addition, the father was granted the right to visitation every other weekend.

On July 11, 1977, while painting the family bathroom, the mother was accidentally electrocuted, and she died the next day. Karista remained with Nelson Teichman, her stepfather, after her mother's death. Her father filed a petition for modification of the custody and support order, asking that custody be awarded to him. Thereafter, the stepfather was allowed to intervene with his petition requesting custody, and the maternal grandmother was also allowed to intervene with a petition seeking custody. At the custody hearing the court heard extensive evidence from all parties which we will summarize.

Following the father's separation from the mother, he moved to New Mexico and later returned to the midwest to Hobart, Indiana, where he now lives with his second wife. He has held a succession of jobs and currently earns $17,500 annually as a loading-dock supervisor. He and his wife have no children and, if he is awarded custody, his wife intends to quit her job and stay home to care for Karista. The small home which the Garrisons rent is located in an area which includes residential property as well as light industry with a cement plant adjacent to the rear of the home. The former den in the home has been prepared as a bedroom for Karista with appropriate furnishings and decorations.

After the May 27, 1977, order, the father made the support payments as directed and fully exercised his visitation rights, but prior to that time he had paid no support and had never visited the child although both support and visitation were included in the 1975 divorce decree. The father attempted to explain his failure to visit Karista by stating that he did not know where his ex-wife lived for a long period of time and that after he did make contact, his efforts to arrange a visit were thwarted by the mother. Disagreeing with the father's testimony was that of Teichman, the stepfather, who said that he knew of no requests from Garrison to visit Karista and that Garrison's mother (Karista's paternal grandmother) regularly sent cards, letters and gifts to Karista and obviously knew where the Teichman family lived.

Teichman is an engineer with the Illinois Department of Transportation and earns $19,000 per year. He owns a four-bedroom home in a residential area of Peoria where he lives with his nine-year-old daughter by a previous marriage. He has supported Karista and been a

father to her since his marriage to her mother. Karista attends a nursery school while he is at work. A psychologist testified that Karista is well adjusted and mature for her age, that she is comfortable with her stepfather, and that it is important for her to have a "mother-figure."

The maternal grandmother, Aletha Hector, is a 45-year-old divorcee who lives near Decatur, Illinois. She has raised three children, is one of a family of 12 children with whom she has maintained close family ties. Mrs. Hector's parents live nearby and would care for Karista while Mrs. Hector is at work. Mrs. Hector has a good relationship with Karista, who has been a frequent visitor in the grandmother's home.

At the conclusion of the hearing, the trial court placed temporary custody with the stepfather until January 1978, to allow Karista time to adjust to the loss of her mother. Thereafter, permanent custody was awarded to the grandmother with the father to have liberal visitation rights and the stepfather also to have visitation. The trial court specifically found that the father was unfit because of his failure to pay support or to visit the child for 2½ years, which amounted to a failure to maintain a reasonable degree of interest, concern, and responsibility as to the child's welfare. The father appeals from the circuit court order.

■■ The father first contends that the trial court's ruling that he is unfit was contrary to the manifest weight of the evidence. He discusses the evidence at length and argues that the evidence of his attempts to visit his daughter before May 27, 1977, and the fact he resided in a different State than his daughter are both matters which should have weighed in his favor. The trial court apparently concluded that the father's version of his efforts to see his daughter was not as persuasive as was the fact that his own mother knew how to reach Karista and where to send her gifts during the time the father claimed not to know her whereabouts. The father mentioned that Karista's mother never tried to contact him although she was given his address and phone number by his mother. The mother's failure to initiate contact with her ex-husband can hardly be considered an excuse for *his* lack of interest. The father's argument really amounts to an attempt to reweigh the evidence and resolve doubts and conflicts in his favor. These are the proper function of the trier of fact, and as a court of review, we cannot substitute our judgment for that of the trial court. We believe the record contains sufficient evidence to support a finding that the father failed to maintain a reasonable degree of interest, concern, and responsibility for his daughter prior to May 27, 1977.

The father also argues that the trial court failed to determine his fitness as of the date of the custodian's death (July 12, 1977), as is required by law. From May 27, 1977, to July 12, 1977, and thereafter, he has paid both current and back support promptly and has visited Karista

frequently. These facts, he argues, show his present interest, concern, and responsibility for his daughter and compel a finding of fitness.

■ We agree that, where the custodial parent dies, the fitness of the surviving parent at the time of the custodian's death is determinative. (*In re Estate of LeCocq* (1974), 17 Ill. App. 3d 1011, 309 N.E.2d 84.) However, we are not so certain that a finding of fitness is required merely because the father has paid support and visited his daughter for the relatively short period from May 27 to July 12 (6½ weeks) or even to the date the hearing was concluded on October 21, 1977 (21 weeks). While the father argues that there was evidence which showed that he and his wife are well qualified to have custody of his daughter, there was also evidence to the contrary which supported the trial court's finding—the father's history of job instability and financial problems, his drinking habits, as well as his abandonment of all parental duties and responsibilities for 2½ years. Considering all of the evidence in the record, it would be difficult to say that the finding of unfitness was contrary to the manifest weight of the evidence.

However, even if we were to conclude that the court erred in finding the father unfit, the father would not necessarily be entitled to custody. The supreme court in *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 209, 247 N.E.2d 417, 421-22, a case similar on its facts to the case at bar, stated as follows:

> "The best interest of the child is the standard and it is not necessary that the natural parent be found unfit or be found to have legally forfeited his rights to custody, if it is in the best interest of the child that he be placed in the custody of someone other than the natural parent. [Citations.]
>
> [In *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 565, 158 N.E.2d 613, 618], we stated: 'The parent need not be shown to be totally unfit to rear the child in order to deny to him the custody of the child. Fitness of the parent is only one of the factors to be considered in determining how the best interest of the child may be served. The sufficiency of the parents' home, its surroundings, and all other matters that have a bearing upon the welfare of the child are to be considered. [Citation.] The parents' natural rights must give way to the welfare and best interest of the child.'
>
> The 'best interest of a child' standard is not always easily applied. The facts and circumstances of each case obviously must be considered."

This court applied the same principle in *Barclay v. Barclay* (1978), 66 Ill. App. 3d 1028, 384 N.E.2d 564.

The father relies upon *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 365 N.E.2d 647, where the reviewing court reversed an order of the trial court awarding custody of two children to their parental grandparents following the death of the father who had custody of the children, and instead awarded custody to the natural mother. The appellate court considered the *Livingston* case and the provision in section 132 of the Probate Act (Ill. Rev. Stat. 1975, ch. 3, par. 132), that if one parent is dead, the surviving parent is entitled to custody if legally competent and a fit person. The court ruled that a person seeking custody in place of the surviving parent has the burden of establishing that the best interest of the child would be served by such custody. In *Eaton,* the natural mother had no contact with her children for about a six-month period while she was recovering from severe emotional problems, and thereafter she made repeated efforts to contact them and paid for tickets for them to travel to Florida to visit her. The evidence in *Eaton,* as discussed in the opinion, failed to show the mother's unfitness or any other good reason for denying custody to her. The evidence in the case at bar is much different from that in *Eaton.*

■■ We must observe that Karista has the good fortune to have three homes open to her where she is wanted and assured of love. In such a case, conflicting custody claims present a court with a difficult problem. The general rule requires that a court of review not disturb the findings of the trial court unless those findings are palpably erroneous or manifestly against the weight of the evidence. (*In re Stilley* (1977), 66 Ill. 2d 515, 363 N.E.2d 820.) The trial court has seen and heard the witnesses and is, therefore, in a position superior to ours to make the necessary determination. We are not persuaded that the court erred in awarding custody to the maternal grandmother, coupled with visitation rights to the father and stepfather. However, we believe the best interest of the child requires that the custody award be a temporary one in recognition of the father's rights and of the circuit court's continuing obligation to be watchful of Karista's welfare. Should a change in conditions occur in the future, the retention of jurisdiction by the circuit court would permit modification of the decree. (See *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417; *Mackie v. Mackie* (1967), 88 Ill. App. 2d 61, 232 N.E.2d 184.) Any future petitions for modification of custody would, of course, be subject to the requirements of section 610 of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1977, ch. 40, par. 610.

We therefore affirm the award of custody to the grandmother, but we also remand this cause to the trial court for modification of the order so that the custody awarded to the grandmother is temporary rather than

permanent, and subject to review should there be a change of circumstances affecting the child's welfare.

Affirmed and remanded with directions.

STOUDER, P. J., and BARRY, J., concur.