*In re* MARRIAGE OF SUZANNE L. STROCHER, Petitioner, and STEVEN E. STROCHER, Respondent-Appellee.—(PAUL D. CARR *et al.*, Petitioners-Appellants.)

Fourth District   No. 16555

Opinion filed April 24, 1981.

CRAVEN, J., specially concurring.

Burger, Fombelle, Wheeler & Dvorak, P. C., of Decatur, for appellants.

Thomas W. Gendry, of Hull, Campbell, Robinson & Gibson, of Decatur, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

A child custody dispute.

Between the natural *father* and the maternal *grandparents*.

The father won below.

We affirm.

At the time Steven and Suzanne Strocher were divorced in 1976, Suzanne was given custody of their two minor children. Suzanne died on March 7, 1980, and on March 12, 1980, Suzanne's parents, Paul and Doris Carr, filed a petition seeking custody of Shane (age 8) and Stephanie (age 5). Steven subsequently filed a counterpetition seeking custody.

Steven works the 11 to 7 shift at A. E. Staley's. He testified that he leaves for work at 10 p.m. and gets home at 7 a.m., at which time he goes to bed and sleeps until 2 or 2:30 p.m. While Steven is asleep or at work,

Shane stays with Steven's mother, who lives on the same block as Steven. Shane is with Steven between 2:30 and 10 p.m. on Steven's workdays and all of the time on Steven's days off.

Steven testified that he had at one time lived with a girlfriend, Kim Longwell, for about six months. However, he was not living with her at the time of the hearing and testified that he would not do so in the future.

Witnesses for the Carrs testified that while Suzanne was alive, the children had to be forced to go with Steven when he came for them. They also stated that the children were dirty, upset, and difficult to control following visits with Steven. In addition, there was testimony showing Stephanie's strong attachment to the Carrs' 15-year-old daughter Lisa and indicating that the Carrs would provide the children with a good home.

■■ ■ Child custody cases are decided according to the best interest of the child. (Ill. Rev. Stat. 1979, ch. 40, par. 602.) It is presumed, however, that it is in a child's best interest to be raised by his natural parent(s). (*In re Marriage of Braden* (1979), 70 Ill. App. 3d 535, 388 N.E.2d 939; *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 365 N.E.2d 647.) Although custody may be awarded to a nonparent absent a finding that the natural parent is unfit (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417; *Soldner v. Soldner* (1979), 69 Ill. App. 3d 97, 386 N.E.2d 1153), such a result will be upheld on appeal only if there are "compelling reasons" for denying custody to the parent. (*In re Custody of Townsend* (1980), 90 Ill. App. 3d 292, 413 N.E.2d 428; *Pierson v. Bloodworth* (1980), 81 Ill. App. 3d 645, 401 N.E.2d 1320; *Cebrzynski v. Cebrzynski* (1978), 63 Ill. App. 3d 66, 379 N.E.2d 713.) The trial judge explicitly applied this standard.

■■ The petitioners have not brought to our attention any factors which we regard as compelling reasons that would justify placing custody with them. Steven's "instability" referred to in the petitioners' brief is not of the type that would compel a court to deny him custody. The fact that he has recently expended $3,000 in establishing a home would allow the trial court to infer that Steven now recognizes and accepts his responsibilities as a father. In addition, he clearly stated to the trial court that he understands he should not carry on an illicit relationship after he receives custody. Compare *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421.

The Carrs argue that the fact that the children would really be spending much of their time with the paternal grandparents, not with Steven, militates in favor of giving them custody. They, however, are hardly in a position to contend that spending time with grandparents is not in the children's best interest. But more importantly, Steven testified that he had already asked to be transferred to the day shift should he receive custody. That change would considerably decrease the time the children would be with Steven's parents.

The petitioners allege in their brief that court records show a substantial arrearage in child support. However, the record on appeal contains no such evidence, and the Carrs presented no testimony challenging statements by both Steven and his mother that he had paid the child support directly to Suzanne. Though petitioners presented evidence that the children were dirty and uncontrollable after visits with Steven, he presented testimony to the contrary. Thus, it was for the trier of fact to determine whether Steven had been neglectful.

Although the petitioners have had considerable contact with the children, the children have not lived in the petitioners' home so long that it would be in their best interest to place them with the petitioners. (Compare *In re Ross* (1975), 29 Ill. App. 3d 157, 329 N.E.2d 333; *Look v. Look* (1974), 21 Ill. App. 3d 454, 315 N.E.2d 623.) See our recent opinion in *In re Custody of Townsend* (1980), 90 Ill. App. 3d 292, 413 N.E.2d 428, wherein we held that compelling reasons did not exist for placing custody with a half-sister, with whom the child had always lived, rather than with the natural father, with whom she had never resided.

The trial court's finding that there were not compelling reasons requiring placing custody with a nonparent is not against the manifest weight of the evidence. (*Garrison v. Garrison* (1979), 75 Ill. App. 3d 726, 394 N.E.2d 788.) We therefore affirm.

Affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, specially concurring:

Although I concur in the court's opinion, I write separately to address the issue of the rule announced in *Jarrett* that "the open and continuing cohabitation of the custodial parent with a member of the opposite sex is contrary to the manifest weight of the evidence in the absence of any tangible evidence of contemporaneous adverse effect upon the minor children." (78 Ill. 2d 337, 345, 400 N.E.2d 421, 423.) In *Jarrett*, the supreme court seemingly announced a *per se* rule, or as Mr. Justice Moran asserted in dissent, "a *conclusive presumption*" of harm from the living arrangement. 78 Ill. 2d 337, 352, 400 N.E.2d 421, 426.

Here the father's cohabitation with a member of the opposite sex had terminated and he was not then the custodial parent. It is not clear whether during the time of such living arrangement he did or did not have the children with him for some periods of time in exercise of visitation privilege. Thus even under *Jarrett*, which we are compelled to follow, only a custodial parent that continues such cohabitation is affected by the court's determination that such conduct "offends prevailing public pol-

icy" (78 Ill. 2d 337, 346, 400 N.E.2d 421, 424) and mandates a change of custody as between the contesting parents.

We are here permitted to be concerned only with the best interest of the child and not with any conduct of the parent.

In a contest for the custody of children between a parent and nonparent the presumption clearly should be that the parent is entitled to custody absent a clear and convincing showing of parental unfitness, which unfitness would have to directly relate to the best interests of the children.

No evidence in this record suggests in any way that the parent is unfit and no evidence in this record suggests in any way that the surviving parent is not entitled to custody. Accordingly, I concur in the judgment.