WILLIAM A. ROSE, Plaintiff-Appellee, v. RUTH POTTS, Defendant-Appellant (*In re* Marriage of William A. Rose, Plaintiff, and Connie L. Rose, now Connie L. Saffle, Defendant-Appellee; *In re* Custody of Stacey Marie Rose, a Minor).

Fifth District    No. 5—90—0238

Opinion filed August 21, 1991.

William K. Thomas, of Robinson, for appellant.

Mark Shaner, of Law Offices of Price & Shaner, of Robinson, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

The circuit court of Crawford County awarded custody of Stacey Marie Rose (hereinafter Stacey) to her mother, Connie Rose, now Connie Saffle (hereinafter Connie), over the claims of Stacey's father, William Rose (hereinafter William), and her paternal grandmother, Ruth Potts (hereinafter Ruth). Only Ruth has appealed. She alleges that the trial court erred in applying the presumption that custody in the natural parent serves the best interest of the child and that even if this presumption was applicable, the trial court's finding that she had not overcome it was against the manifest weight of the evidence. The relevant facts will be set forth below chronologically.

In 1983 Connie, at age 17, gave birth to her first child, Michael. Connie and Michael lived with Connie's parents in Wichita, Kansas, for one year. Connie then obtained a court order placing legal custody of Michael with her parents and joined the United States Army. Shortly thereafter, on February 25, 1984, she married William, who was also a member of the United States Army. Michael remained with Connie's parents. On December 12, 1985, Connie gave birth to Stacey, and on February 16, 1986, William delivered Stacey to Ruth in West York, Illinois. Connie and William separated on February 19, 1986, and were divorced on April 2, 1986. The decree awarded custody of Stacey to William and provided liberal visitation for Connie. Connie was also ordered to pay $41.50 in monthly child support. The record reveals that Connie did not contest the custody proceedings.

After being discharged from the army in June of 1986, Connie moved back to her parents' home. In September of 1986 she was convicted and sentenced to 60 days in the county jail and three years' probation for writing "bad checks." After being released from jail, Connie worked at her parents' daycare center earning $75 a week. Connie paid no rent while living with her parents. Also, the record indicates that Connie began receiving disability payments in the amount of $236 in February of 1987. Connie moved out of her parents' home in November of 1987 and married Mike Saffle on December 1, 1987. Michael remained in the care and custody of Connie's parents, and Stacey continued to live with Ruth.

In the summer of 1988 William informed Ruth that he intended to take Stacey to live with him in Germany. Ruth sought guardianship rights over Stacey and told Connie of William's intentions. Thereaf-

ter, Connie, William, and Ruth filed petitions seeking permanent custody of Stacey. In September 1989 Connie gave birth to her third child, Joshua.

Connie and Mike Saffle and their son, Joshua, live in Hutchinson, Kansas, approximately 50 miles from Connie's parents. Mike Saffle is an unemployed school teacher, but he makes $700 a month as a Wendy's management trainee. Connie no longer works, but she has two years of college education and eventually hopes to return to college and become a schoolteacher. Connie and Mike Saffle have changed residences six times in the last two years, but they have recently made an offer to purchase a home.

The record reveals that during the four years that Ruth has cared for Stacey, Connie has paid only $420 to Ruth for Stacey's support. While she called Stacey once a month and sent cards on birthdays and holidays, she visited Stacey for only portions of 17 days during this four-year period. Connie admitted that Ruth did not prevent her from visiting Stacey.

Ruth worked for two years as a secretary at Crawford's Sand and Gravel before Stacey was left with her on February 16, 1986. She quit working to care for Stacey. During the first seven months that Stacey lived with Ruth, Dennis Potts, Ruth's ex-husband, was the sole means of financial support. From March 1987 through September 1989, Ruth and Dennis received a monthly military allotment from the army through William in the sum of $275. In September 1989, Ruth and Dennis were divorced. Dennis does not provide financial support to Ruth. Ruth and Stacey now live with Ruth's sister, Rose Beatty, and her two children. Rose's husband passed away in 1986. Ruth pays no rent, but instead cleans the house for Rose. Ruth currently earns $100 a week cleaning and ironing. She does not receive any support from Connie or William. She intends to seek full-time employment in the future.

The undisputed testimony at trial was that Stacey was happy and well taken care of by Ruth. Stacey refers to Ruth as "Mommy." The guardian *ad litem* recommended that custody of Stacey be awarded to Ruth.

■ Ruth initially asserts that the trial court erred in applying the superior-right doctrine after she had met the standing requirements of section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 601(b)(2)). This section provides:

> "§601. Jurisdiction—Commencement of Proceeding. ***
> (b) A child custody proceeding is commenced in the court:

* * *

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents."

Ruth argues that once she fulfilled the statutory rights, she and the natural parent were on equal ground, and the superior-rights doctrine was inapplicable. We disagree.

"In child-custody disputes it is an accepted presumption that the right or interest of a natural parent in the care, custody and control of a child is superior to the claim of a third person. The presumption is not absolute and serves only as one of several factors used by courts in resolving the ultimately controlling question of where the best interests of the child lie." (*In re Custody of Townsend* (1981), 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234.)

The trial court need not find that the natural parent is unfit or has forfeited her custodial rights before awarding custody to a nonparent if the best interests of the child will be served. (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 208-09, 247 N.E.2d 417, 422.)

"[A] third party seeking to obtain or retain custody of a child over the superior right of the natural parent must demonstrate good cause or reason to overcome the presumption that a parent has a superior right to custody and further must show that it is in the child's best interests that the third party be awarded the care, custody and control of the minor." *Townsend*, 86 Ill. 2d at 510-11, 427 N.E.2d at 1236.

■ The above-cited cases indicate that Ruth's compliance with section 601(b)(2) did not place her on equal ground with Connie. Connie was entitled to the presumption that awarding her custody would serve the best interests of Stacey. However, while we conclude that the trial court applied the correct principle of law and while we recognize that in viewing the judgment of a trial court respectful weight must be given the consideration that the trial court had the opportunity of observing the witnesses (*People ex rel. Edwards v. Livingston*, 42 Ill. 2d at 210, 247 N.E.2d at 422), we conclude that the trial court's finding that Ruth had not overcome the presumption was against the manifest weight of the evidence.

"Whenever the court is called upon to determine whether custody of a minor child should be awarded to the father of the child or his grandparents[,] the 'best interests of child' doctrine

stands for the proposition that custody be awarded in accordance with the best interest of the child regardless of the fitness of the father. We agree with appellant that there is a presumption that custody by the father will be in the best interest of the child and ordinarily the natural right of a father will prevail in a contest between him and the grandparents where both parties are equally fit to care for the child. However, the rule is applicable only when *the father is not chargeable with laches or forfeiture as having left the child with the other party* for a long period of time[,] and further the rule always yields to the best interest of the child. [Citation.] In a particular case the forces of environment may be so strong as to compel the court, in the best interests of the child, to deny the natural right of the father even when he is a perfectly fit person to have custody of the child." (Emphasis in original.) (*Look v. Look* (1974), 21 Ill. App. 3d 454, 458, 315 N.E.2d 623, 626.)

While the fact that the nonparent has had physical custody of the child for a substantial length of time does not neutralize the superior-right doctrine, it may, in a given case, be the determining factor in the custody decision. *Townsend*, 86 Ill. 2d at 515, 427 N.E.2d at 1238.

In this case it is not disputed that Stacey was left with Ruth at the age of two months and has been raised by Ruth for nearly four years. Under *Townsend*, this fact alone would not overcome the presumption that custody should be placed with Connie. However, in this case it is also not disputed that Connie paid virtually no support to Ruth for her daughter's support. Moreover, while she called Stacey once a month and sent cards on birthdays and holidays, she has only visited Stacey for portions of 17 days in four years. She asserted that she could not visit Stacey because of the considerable distance between them. However, she never attempted to bring Stacey into her home. She only sought custody of Stacey after being informed by Ruth that William was intending to take Stacey to Germany. We also cannot ignore the fact that Connie's seven-year-old son, Michael, has spent nearly his entire life with his maternal grandparents. While Connie asserts that he is now spending summers with her, it is undisputed that legal custody of Michael remains with her parents.

We are certainly cognizant of the fact that Ruth's circumstances are not ideal. However, as indicated earlier, it is not disputed that Stacey is happy and well cared for by Ruth. In addition, Ruth will be entitled to child support from Connie and William which will further improve her situation.

We cannot and will not speculate with the life of a child, and we must accept that which is apparent. (See *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 566, 158 N.E.2d 613, 618.) Connie's past conduct fails to inspire any degree of confidence in her ability to properly care for Stacey. The trial court's decision to award permanent custody of Stacey to Connie was against the manifest weight of the evidence.

While we conclude that the interests of Stacey would have been best served by continuing her custody in Ruth, in view of the fact that Stacey has now lived with Connie for a period of time, we believe that Ruth should not now be awarded permanent custody of Stacey, but only temporary custody. We reverse the judgment and remand the cause to the circuit court of Crawford County for the entry of a decree awarding temporary custody and control of Stacey to Ruth. We direct also that the order should provide for reasonable visitation privileges in favor of Connie and William. See *People ex rel. Edwards v. Livingston*, 42 Ill. 2d 201, 247 N.E.2d 417.

Reversed and remanded with directions.

RARICK and GOLDENHERSH, JJ., concur.